UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

_____

LATEE BAKER, BRADLEY CROWE,
STEVEN CAMACHO and KATINA MURRAY,
on behalf of themselves and all other
employees similarly situated, and individually

                                                                    3:19-CV-390[FJS/DEP]

                                                    Plaintiffs,

v.

                                                                    **CLASS ACTION
                                                                    AND COLLECTIVE
                                                                    ACTION
                                                                    COMPLAINT AND
                                                                    DEMAND FOR
                                                                    JURY TRIAL**

THE EVEREST HOTEL GROUP, LLC,
RAJUMAANAR ENTERPRISES CORP.,
AMIR KHAN, SUNNY KHAN and BETH ANNE SMITH

                                                    Defendants
_____

     Latee Baker, Bradley Crowe, Steven Camacho and Katina Murray
(hereinafter "Named Plaintiffs," "Class Representatives" and/or "Plaintiffs") by
their attorney, Stan Matusz, Esq., allege and aver as follows:

<u>**NATURE OF CLAIMS**</u>

1. This is a proceeding for declaratory relief and monetary damages to:
   redress the deprivation of rights secured to the Named Plaintiffs
   individually, and on behalf of all other employees similarly situated, under
   the Fair Labor Standards Act of 1938, as amended, 29 U.S.C. § 201 et
   seq. ("FLSA") and under the New York Labor Law ("NYLL"), for failure to
   pay promised wages and overtime to Named Plaintiffs, individually, as well

as other current and former employees of Defendants who are similarly situated. In addition, the Named Plaintiffs assert pendant state law claims for breach of contract.

## JURISDICTION & VENUE

2. The original subject matter jurisdiction of this Court is invoked pursuant to 28 U.S.C. § 1331, 28 U.S.C. 1343 (3) and (4) conferring original jurisdiction upon this Court of any civil action to recover damages or to secure equitable relief under any Act of the Congress providing for the protection of civil rights; under 28 U.S.C § 1337 conferring jurisdiction of any civil action arising under any Act of Congress regulating interstate commerce; under the Declaratory Judgment Statute, 28 U.S.C. § 2201; and 29 U.S.C. § 216(b).

3. This Court's pendant jurisdiction of claims arising under the New York State Labor Law and New York contracts law are also invoked under 28 U.S.C. § 1367 because they arise from a common nucleus of operative facts with the federal claims and are so related as to form part of the same case or controversy under Article III of the United States Constitution.

4. Venue is appropriate in the Northern District of New York since the allegations arose in the District, Defendants do business within this District, Defendants employed the Named Plaintiffs in this District, the Named Plaintiffs and the Defendants reside in this District, and the Defendants are subject to personal jurisdiction in this District.

2

## PARTIES

5.  Defendant Everest Hotel Group, LLC, is a New York Limited Liability Company with an office located at 753 Foster Valley Road, Owego, NY 13827.  Defendant owns and operates a Comfort Inn located at 7662 NY-434, Apalachin, New York 13731, in the Northern District of New York.  The Defendant engages in a business that employs Named Plaintiffs and other Class Members.

6.  Defendant Rajumaanar Enterprises Corporation is a New York corporation with an office located at 753 Foster Valley Road, Owego, NY 13827.  Defendant owns and operates a Perkins Restaurant franchise located at 7662 NY-434, Apalachin, New York 13731, in the Northern District of New York.  The Defendant engages in a business that employs Named Plaintiffs and other Class Members.

7.  Defendants Everest Hotel Group, LLC and Rajumaanar Enterprises, Inc. constitute a single, integrated enterprise because they share common management, their operations are interrelated, control of labor relations is centralized, they have common ownership, and they are physically located in the same building.

8.  Defendant, Sunny Khan, is a General Manager of the Perkins Restaurant and Comfort Inns, which are both located at 7662 NY-434, Apalachin, New York 13731, in the Northern District of New York.  The Defendant engages in a business that employs Named Plaintiffs and other Class Members.

9. Defendant, Amir Khan, is a principal owner/member of Everest Hotel Group, LLC and Rajumaanar Enterprises, Inc. and is involved in day to day management of both enterprises.

10. Defendant, Beth Anne Smith is a principal owner/member of Everest Hotel Group, LLC and Rajumaanar Enterprises, Inc. and is involved in day to day management of both enterprises.

11. At all times relevant to this action, Defendants employed the Named Plaintiffs and those similarly situated within 29 U.S.C. § 203(d) and comprised an "enterprise" engaged in interstate commerce or the production of goods for commerce as defined in 29 U.S.C. §§ 203(r) and (s).

12. At all relevant times, Named Plaintiffs were employees of Defendants under the FLSA and NYLL.

13. Named Plaintiff Steven Camacho is a resident of the State of New York, residing at 203 O'Dell Avenue, Endicott, NY 13760.  Mr. Camacho was employed by Defendants as a line cook from approximately July 21, 2017 through September 22, 2017.  Defendants failed to compensate Ms. Camacho for all hours worked, both regular and overtime.

14. Named Plaintiff Latee Baker is a resident of the State of New York, residing at 203 O'Dell Avenue, Endicott, NY 13760.  Mr. Baker was employed by Defendants as a prep cook and dishwasher from approximately July 21, 2017 to October 4, 2017.  Defendants failed to compensate Mr. Baker for all hours worked, both regular and overtime.

15. Named Plaintiff Katina Murray is a resident of the State of New York, residing at 12 Lincoln Avenue, Endicott, NY 13760. Ms. Murray was employed by Defendants from approximately August 12, 2017 through September 18, 2017. Defendants failed to compensate Ms. Murray for all hours worked, both regular and overtime.

16. Named Plaintiff Bradley Crowe is a resident of the State of New York, residing at 110 Harrison Avenue, Apt. #3, Endicott, NY 13760. Mr. Crowe was employed by Defendants from approximately August 12, 2017 through September 25, 2017. Defendants failed to compensate Mr. Crowe for all hours worked, both regular and overtime.

17. The Class Members are those employees similarly situated to Named Plaintiffs.

**<u>FACTUAL BACKGROUND</u>**

18. Named Plaintiffs and Class Members were employed by Defendants in Apalachin, New York.

19. Throughout their tenures, Named Plaintiffs and Class Members worked hours for which they were not paid, including hours worked in excess of forty (40) in a week.

20. Named Plaintiffs and Class Members were required to perform work to meet Defendant's goals and to complete their required job duties. When they arrived at work, Named Plaintiffs and Class Members were required to sign into an electronic time clock.

21. The electronic time clock was connected to a computer program that reported the hours worked and clock-in times for payroll purposes. However, instead of using the actual hours recorded on the electronic timeclock, General Manager, Sunny Khan, electronically altered Named Plaintiffs' and Class Members' time entries. Specifically, Sunny Khan: (a) falsified the clock-in time when Named Plaintiffs and Class Members arrived for their shift, making it appear that they started work later; (b) falsified the clock-out time at the end of their shift, making it appear that Named Plaintiffs and Class Members ended the work day earlier; and (c). deducted breaks when Named Plaintiffs and Class Members had worked through their lunch and/or taken no break.

22. An electronic trail shows the pervasiveness of Defendant's falsification of employee time entries.

23. Individual employees personally witnessed Mr. Kahn altering time entries.

24. The net effect of these policies was that Defendants systematically deleted compensable time under both the FLSA and NYLL, depriving Named Plaintiffs and Class Members of regular and overtime pay for all hours worked.

25. A few Named Plaintiffs and Class Members noticed that their pay was not corresponding to their hours worked and complained directly and repeatedly to the General Manager (Sunny Khan), and to Defendants' President and principal shareholder, Beth Ann Smith, and Amir Khan.

Indeed, one of Defendants' managers had multiple discussions with Defendants principal owners about the wage theft, but nothing was done.

26. In addition to falsifying time and wager theft, there were also recent occasions when Defendants actually paid Named Plaintiffs and Class Members with personal checks, rather than payroll checks.  On several recent occasions, payroll checks that Defendants provided to its employees were returned due to insufficient funds.

27. Finally, there were multiple occasions where Defendants gave employees their checks but instructed them to not cash or deposit them immediately.

28. There were also instances when Defendants paid Plaintiffs with checks generated by Everest Hotel Group, LLC.

29. The uncompensated activities performed by Named Plaintiffs and Class Members include, but are not limited to: cook, line cook, dishwashers, prepping, bakers, kitchen manager, hostess, food service and manager. All the time spent performing these tasks was compensable time under both the FLSA and New York Labor Law.

30. As a net result of these policies, Named Plaintiffs and Class Members were not paid for all compensable work on a daily basis throughout the duration of their employment.

31. As a representative example, and without limitation, the following are specific examples of pay periods where Defendants falsified and reduced Named Plaintiff Camacho's actual work hours:

Pay period ending 8/27/17: Mr. Camacho worked 48 hours, but was only paid for 40.64 hours. He was deprived of 7.36 overtime hours at $16.50 per hour (which equals $121.44 in stolen wages);

Pay period ending 9/3/17: Mr. Camacho worked 48 hours, but was only paid for 43.97 hours. He was deprived of 4.03 overtime hours at $16.50 per hour (which equals $66.50 in stolen wages);

Pay period ending 9/17/17: Mr. Camacho worked 23.5 hours, but was only paid for 0 hours. He was deprived of 23.5 straight time hours at $11.00 per hour (which equals $258.50 in stolen wages).

32. As a representative example, and without limitation, the following are specific examples of pay periods where Defendants falsified and reduced Named Plaintiff Latee Baker's actual work hours:

Pay period ending 8/27/17: Mr. Baker worked 50 hours, but was only paid for 35.42 hours. He was deprived of 4.58 straight time hours at $9.75 per hour (which equals $44.66 in stolen wages) plus 10.0 overtime hours at $14.63 per hour (which equals $146.30 in stolen wages);

Pay period ending 9/3/17: Mr. Baker worked 50 hours, but was only paid for 40.38 hours. He was deprived of 9.62 overtime hours at $14.63 per hour (which equals $140.74 in stolen wages);

Pay period ending 9/10/17: Mr. Baker worked 50 hours, but was only paid for 42.93 hours. He was deprived of 7.07 overtime hours at $14.63 per hour (which equals $103.43 in stolen wages);

Pay period ending 101/17: Mr. Baker worked 50 hours, but was only paid for 22.61 hours. He was deprived of 17.39 straight time hours at $11.00 per hour (which equals $191.29 in stolen wages) plus 10.0 overtime hours at $16.50 per hour (which equals $165.00 in stolen wages).

33. As a representative example, and without limitation, the following are specific examples of pay periods where Defendant falsified and reduced Named Plaintiff Murray's actual work hours:

8

Pay period 9/3/17: Ms. Murray worked 45 hours, but was only paid for 34.92 hours.  She was deprived of 5.08 straight time hours at $11.00 per hour (which equals $55.88 in stolen wages) plus 5.0 overtime hours at $16.50 per hours (which equals $82.50 in stolen wages);

Pay period 9/10/17: Ms. Murray worked 20 hours, but was only paid for 16.64 hours.  She was deprived of 3.36 straight time hours at $11.00 per hour (which equals $36.96 in stolen wages);

## WILFULNESS UNDER THE FLSA & NYLL

34. Defendants willfully deprived Named Plaintiffs and Class Members of wages for all the hours they were working.

35. Named Plaintiffs Baker, Camacho, Crowe, Murray and other employees confronted General Manager, Sunny Khan, about the wage theft. Defendants' former Manager, Heather Jewitt, also had multiple conversations with General Manager Kahn confronting him about wage theft.  Jewitt also reported information to Ms. Beth Anne Smith, Defendant's President and principal shareholder, regarding the widespread wage theft that was occurring, and to Mr. Amir Khan.

36. Despite these repeated complaints, Defendants continued to engage in blatant wage theft.

37. Defendants' actions constitute blatant and willful violations of both the FLSA and NYLL, pursuant to 29 U.S.C. § 255(a) and NYLL Article 19 §§ 650, *et seq.,* rendering them liable for an additional award of liquidated equal to 100% of the sum of the amount of wages and overtime which were not paid to the Named Plaintiffs, Members of the Class and Collective Action Members.

38. Defendants' policies ensure that they do not pay regular and overtime pay to its employees according to state and federal law.  These policies apply to all similarly situated employees of Defendants, and have been in effect since the business started in July of 2017.

## JOINT AND SEVERAL LIABILITY UNDER N.Y. BUSINESS CORPORATIONS LAW SECTION 630

39. Pursuant to N.Y. Business Corporations Law § 630 and Section 609 of the Limited Liability Company Law, the ten largest shareholders of Rajumaanar Enterprises Corp., and the ten LLC members with the largest ownership interests in Everest Hotel Group, LLC are, jointly and severally, personally liable for all debts, wages or salaries due and owing to any of its laborers, servants or employees other than contractors, for services performed by them.

40. The filing of this Complaint, and service of the same upon Defendants, constitutes written notification that personal liability against the ten largest shareholders of Rajummanar Enterprises Corp. and ten LLC members with the largest ownerships interests Everest Hotel Group, LLC, will be pursued under Section 630 of the N.Y. Business Corporations Law.

## INDIVIDUAL LIABILITY UNDER FAIR LABOR STANDARDS ACT AND NEW YOK LABOR LAW

41. Defendants Sunny Khan, Amir Khan and Beth Anne Smith had the authority to: hire and fire employees, dictated how often and when they

would appear on Defendants' work schedule, and make alterations to employees' hours and paychecks, indiscriminately.

42. Defendants Sunny Khan, Amir Khan and Beth Anne Smith had actual control over   Defendants' actual operations that directly affected the nature and conditions of Defendants' employees.

43. Based on their actual control and authority, Defendants Sunny Khan, Beth Anne Smith and Amir Khan are "employers" for purposes of the FLSA and NYLL, and subject to individual liability under both statutes.

## CLASS ACTION ALLEGATIONS UNDER NEW YORK LABOR LAW

44. The claims arising under the NYLL are properly maintainable as a class action under Federal Rule of Civil Procedure 23 ("Rule 23") under subsections (1), (2), and (3).

45. The Class (hereinafter referred to as those individuals "similarly situated" or "class members") is defined as those current and former, non-exempt, full and part-time employees of Defendants employed since July 2017 in Apalachin, New York, who were not paid for all hours suffered or permitted to work, including overtime pay for hours worked more than forty (40).  The job functions covered included, but are not limited to: cook, line cook, dishwasher, hostess, prep cook, baker, and food service.

46. Upon information and belief, the Class size is over one hundred (100) current and former employees, which makes the Class so numerous that joinder of all members is impracticable.

47. The Named Plaintiffs will adequately represent the interests of the Class Members because they are similarly situated to the Class Members, their claims are typical of, and concurrent to, the claims of the other Class Members, and there are no known conflicts of interest between the Named Plaintiffs and the other Class Members.

48. The Class Counsel, Stan Matusz, Esq., is qualified and able to litigate the Class Members' claims.    Class Counsel concentrates his practice in employment litigation and specializes in the prosecution of class and collective action litigation for violations of the FLSA and NYLL.

49. Common questions of law and fact predominate in this action because the claims of all the Class Members are based on whether Defendants, by falsifying its employees' time entries, failed to properly pay overtime and straight time to non-exempt employees for all hours worked in violation of the NYLL.

50. The Class is maintainable under subsection (3) of Rule 23(b) because common questions of law and fact predominate among the Class Members and because the class action is superior to other available methods for the fair and efficient adjudication of the controversy.

51. The Class action is maintainable under subsection (1) of Rule 23(b) because prosecuting separate actions by individual Class Members would create the risk of inconsistent adjudications, resulting in incompatible standards of conduct for Defendants.

## AS AND FOR A FIRST CLAIM:  FAIR LABOR STANDARDS ACT

52. Named Plaintiffs and Class Members reallege the above paragraphs as if fully restated herein.

53. Defendant's policies were applied to all similarly situated employees of Defendants in Apalachin, New York. Accordingly, this action is maintainable as an FLSA Collective Action, pursuant to 29 U.S.C. § 201, et seq.

54. Defendant willfully violated its obligations under the FLSA and is liable to Named Plaintiffs and those similarly situated.


## AS AND FOR A SECOND CLAIM:  NEW YORK LABOR LAW CLASS ACTION

55. Named Plaintiffs and Class Members reallege the above paragraphs as if fully restated herein.

56. Defendants willfully violated its obligations under the NYLL and are liable to Named Plaintiffs and those similarly situated.

57. As a result, Defendants violated, and continues to violate, NYLL Article 19 § 650, et seq., and the supporting New York State Department of Labor Regulations.

58. Due to Defendants' violations of the NYLL, Named Plaintiffs and Class Members are entitled to recover compensation for unpaid wages, compensation for overtime wages, an additional amount as liquidated

13

damages, and reasonable attorneys' fees, costs and disbursements of this action, pursuant to NYLL 19 § 663.

## INDIVIDUAL RETALIATION CLAIMS UNDER FAIR LABOR STANDARDS ACT & NEW YORK LABOR LAW: PLAINTIFFS CAMACHO AND BAKER

### A.    Plaintiff Steven Camacho

59. Steven Camacho was hired by Defendants in July 2017.  On September 18, 2017, Mr. Camacho complained to General Manager Sunny Khan that Defendants were altering his work hours and that he was being shortchanged of his wages in his paychecks.

60. On September 22, 2017, just days after making his complaint, Mr. Camacho was terminated by Defendants under circumstances giving rise to an inference of retaliation.

61. According to Defendants, Mr. Camacho was allegedly being terminated for kissing a fellow female coworker on the neck.  However, no investigation was done of the alleged incident, and nothing was said to Mr. Camacho about this allegation prior to his termination.  Indeed, according to Defendants' Manager at the time, the incident allegedly occurred three weeks prior to his termination.

62. Significantly, on September 21, 2017, just days after Mr. Camacho complained of wage theft, General Manager Sunny Khan approached a female waitress and asked her to sign a statement indicating that Mr. Camacho had kissed her on this neck.  Defendant Khan solicited this statement just three (3) days after Mr. Camacho had complained that Khan had shorted his pay check, and one day before he was terminated.

14

63. When he was told the reason for his termination, Mr. Camacho demanded that Defendant Khan review Defendant's on-site video cameras which would confirm that he had not kissed anyone at work.  Defendant Khan refused to do so.

64. Mr. Camacho had been an exemplary employee of Defendant.  The explanation given for his discharge was a pretext to cover up the actual reason for his termination: his complaint about Defendants' blatant wage theft.

**B.    Plaintiff Latee Baker**

65. Latee Baker was an exemplary employee of the Defendants who was hired in July 2017 when the restaurant first opened.

66. Plaintiff Baker was keeping track of his actual work hours on his phone and began to see that Defendants were shorting his paychecks by a substantial number of hours each week.

67. In the last week of September, Mr. Baker complained directly to Defendants' General Manager, Sunny Khan.  He complained that his paychecks were missing hours.  Khan responded: *"If you work more than forty (40) hours, I'm not paying you overtime."*  Mr. Baker responded: *"But I've worked the overtime."*  Khan then repeated his prior statement.  Baker, in fact, was not paid for the actual hours he worked.

68. On October 2, 2017, Mr. Baker received his paycheck for the week and he was again shorted in his hours and pay.  Later that same day, Mr. Baker's girlfriend, Lysette Camacho, called the restaurant to complain.  She asked

to speak with Defendant Khan.  Mr. Khan did not return her call.  Instead, he instructed manager, Heather Jewitt, to return the phone call.  During the call with Ms. Jewitt, Plaintiff Baker's girlfriend complained about the wage theft and threatened legal action.  Ms. Jewitt relayed the substance of the Complaint to Defendants Khan and Beth Anne Smith.

69. The next day, on October 3, 2017, Defendant Khan, walked up to Mr. Baker at work and asked: *"Are you getting a lawyer involved?"* Mr. Baker responded: *"That is not your business."*

70. On October 4, 2017, Defendant Khan sent Latee Baker home early form work with no explanation.  Since that date, Mr. Baker has not been put on Defendants' work schedule.  Plaintiff Baker was effectively terminated in blatant retaliation for complaining of wage theft.

71. When Defendant Khan instructed Defendant's Manager, Heather Jewitt, to no longer put Mr. Baker on Defendants' work schedule, Ms. Jewitt said: *"You can't fire him [Baker] because he's asking for help on his paycheck. That's illegal."*

## AS AND FOR A THIRD CLAIM - FLSA RETALIATION: INDIVIDUAL PLAINTIFFS CAMACHO AND BAKER

72. Plaintiffs reallege the above paragraphs as if fully restated herein.

73. Under the FLSA, it is *"unlawful for any person…to discharge or in any manner discriminate against any employee because such employee has filed any complaint or instituted or caused to be instituted any proceeding under [the FLSA]…"* 29 U.S.C. § 215(a)(3).

16

74. Plaintiffs Camacho and Baker engaged in protected activity under the FLSA by filing a complaint with their employer. Defendants then retaliated against them for exercising those rights by firing them.

75. As a direct and proximate result of the unlawful retaliatory conduct in violation of the FLSA, Mr. Camacho and Mr. Baker have suffered economic harm for which they are entitled to back pay, reinstatement and/or front pay, and other relief.

76. As a direct and proximate result of the unlawful discriminatory conduct in violation of the FLSA, Mr. Camacho and Mr. Baker have suffered and continue to suffer mental anguish and emotional distress, including but not limited to, depression, humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence, and emotional pain and suffering for which they are entitled to monetary damages and other relief.

77. The foregoing conduct of Defendants constitutes willful violations of the FLSA for which Plaintiffs Baker and Camacho are entitled to an additional amount as *liquidated* damages.

78. The foregoing conduct of Defendants constitutes willful violations of the FLSA for which Plaintiffs Baker and Camacho are entitled to an additional amount as *punitive* damages.

79. Plaintiffs are also entitled to reasonable attorneys' fees, costs and disbursements of this action, and further legal and equitable relief as may be appropriate under the FLSA.

### AS AND FOR A FOURTH CLAIM - RETALIATION UNDER THE NYLL: INDIVIDUAL PLAINTIFFS CAMACHO AND BAKER

80. Plaintiffs reallege the above paragraphs as if fully restated herein.

81. The New York Labor *"prohibits an employer from discharging, penalizing or in any other manner retaliating against an employee because such employee has made a complaint to his or her employer … that the employer has violated any provision of … the Labor Law."* NYLL Article 19 § 215.

82. Named Plaintiffs Camacho and Baker engaged in protected activity by complaining about the falsification of hours and deprivation of pay. Defendants discharged them because of that protected activity. As a direct and proximate result of the unlawful retaliatory conduct in violation of the NYLL, Plaintiffs Baker and Camacho suffered economic harm for which they are entitled to back pay, reinstatement and/or front pay, and other relief.

83. As a direct and proximate result of the unlawful discriminatory conduct in violation of the NYLL, Plaintiffs Baker and Camacho suffered, and continue to suffer, mental anguish and emotional distress, including but not limited to, depression, humiliation, embarrassment, stress and anxiety, loss of self-

esteem and self-confidence, and emotional pain and suffering for which they are entitled to monetary damages and other relief.

84. The foregoing conduct of Defendants constitutes willful violations of the NYLL for which Plaintiffs Baker and Camacho are entitled to an additional amount as *liquidated* damages.

85. The foregoing conduct of Defendants constitutes willful violations of the NYLL for which Plaintiffs Baker and Camacho are entitled to an additional amount as *punitive* damages.

86. Plaintiffs Baker and Camacho are also entitled to reasonable attorneys' fees, costs and disbursements of this action, and further legal and equitable relief as may be appropriate under the NYLL.

## <u>AS AND FOR A FIFTH CLAIM – BREACH OF CONTRACT</u>

87. Plaintiffs reallege the above paragraphs as if fully restated herein.

88. On October 24, 2017, Plaintiffs Camacho, Baker and Murray commenced an action, styled: *Steven Camacho et al. v. Rajumaanar Enterprises, Inc., et al*, No. 3:17-CV-1181 (N.D.N.Y) (hereinafter "the *Camacho Case*"). The sole Defendants in that action were Rajumaanar Enterprises, Inc. and Sunny Khan.

89. On July 18, 2018, the Parties met with United States Magistrate Judge, David Peebles, for a settlement conference. On that date, the Parties

reached agreement on the material terms of a settlement and memorialized it, on the record, before Judge Peebles.

90. On August 21, 2018, the Parties to the *Camacho Case* entered into a settlement agreement which is attached hereto as **Exhibit A**.  Among other things, this Settlement Agreement provided for a full release of claims against Rajumaanar Enterprises, Inc., and Sunny Khan in exchange for consideration in the sum of Twenty-eight Thousand and One Hundred Fifty Dollars and Zero Cents ($28,150.00).

91. Per the terms agreed upon before Judge Peebles, and as set forth in Exhibit A, the Settlement Agreement provided for the following payment schedule as an accommodation to Defendants Rajumaanar and Sunny Khan:

> ***Payment Schedule*** *– As an accommodation to Defendants, the Parties have agreed that the amounts in Paragraph 2 will be paid according to the following payment schedule:*
>
> *Defendants will issue and deliver a Two Thousand Five Hundred Dollar and Zero Cent ($2,500.00) bank check payable to Stan Matusz, Esq., within thirty (30) days after execution of this Agreement;*
>
> *Defendants will issue and deliver Eighteen (18) checks of One Thousand Four Hundred and Twenty-Five Dollar and Zero Cent ($1,425.00) on the first (1st) of each month.  The first check shall be issued and delivered on or before October 1, 2018 and the eighteenth (18th) and final check shall be issued and delivered on or before March 1, 2020.*

92. Plaintiffs performed under the agreement and filed a Stipulation of Discontinuance in the *Camacho* case.

20

93. Defendants Rajumaanar and Sunny Khan initially issued the check referenced in Paragraph (a) and the first five (5) monthly settlement payments referenced in paragraph (b) of the Settlement Agreement. However, Defendants Rajumaanar and Sunny Khan have since failed to make the March 1, 2019 and April 1, 2019 payments set forth in the Settlement Agreement.

94. On March 4, 2019, Plaintiffs (through their counsel) notified Defendants' attorney that Defendants were in breach of the agreement and gave the Defendants until March 7, 2019 to cure the breach.  Defendants failed to cure the breach by that date.

95. On March 11, 2019, Plaintiffs (through their counsel) notified Defendants' attorney that the breach of the Settlement Agreement had not been cured as of that date and warned that litigation would be commenced.

96. As of today's date, Defendants have made no further attempts to make any payment under the terms of the Settlement Agreement, including the April 1, 2019 payment, which is now past due.

97. Plaintiffs Camacho, Baker and Crowe have been damaged by Defendants' breach of the aforementioned Settlement Agreement.    Specifically, Plaintiffs are owed $18,525.00 in unpaid monies under the Agreement.

**TRIAL BY JURY**

98. Plaintiffs demand a trial by jury on all claims properly triable by a jury.

**WHEREFORE**, the Named Plaintiffs respectfully request that this Court enter judgment against Defendants in favor of themselves and those similarly-situated, and that they and those similarly situated be given an award of $150,000.00 representing the following forms of relief:

A.      An award of the value of Plaintiffs' unpaid wages, overtime and fringe benefits to Named Plaintiffs, Collective Action members, and members of the NYLL Class equaling $50,000.00;

B.      An award of liquidated damages under the FLSA equal to 100% of the sum of the amount of the wages and overtime which were not properly paid to the Named Plaintiffs and Collective Action Members equaling $50,000.00;

C.      An award of liquidated damages under the NYLL equal to 100% of the sum of the amount of wages and overtime which were not properly paid to Named Plaintiffs and members of the NYLL Class equaling $50,000.00.

D.      An award of reasonable attorneys' fees, expenses, expert fees, disbursements and costs incurred in vindicating the rights of Named Plaintiffs and those similarly-situated.

E.      An award of pre and post judgment interest;

F.      Granting such additional relief as this Court deems just and proper.


**WHEREFORE**, Individual Plaintiffs Baker and Camacho respectfully request that, this Court enter judgment against Defendants in favor of themselves on the FLSA

and NYLL retaliation claims, and that they be awarded $90,000.00 representing the following forms of relief:

A.      $30,000.00 for lost back pay and front pay;

B.      $30,000.00 for compensatory damages;

C.      $30,000.00 for liquidated;

D.      An award of reasonable attorneys' fees, expenses, expert fees, disbursements and costs incurred in vindicating the rights of Plaintiffs Baker, Camacho and Pascucci;

E.      An award of pre and post judgment interest;

F.      Granting such additional relief as this Court deems just and proper.


**WHEREFORE**, Individual Plaintiffs Baker, Camacho, Crowe and Murray respectfully request that this Court enter judgment against Defendants Rajumaanar Enterprises, Inc. and Sunny Khan in favor of themselves on the breach of contract claim, and that they be awarded the following forms of relief:

A.      Judgment in the amount of $18,525.00 for contractual damages;

B.      An award of reasonable attorneys' fees, expenses, disbursements and costs incurred in vindicating the rights of Plaintiffs Baker, Camacho, Crowe and Murray;

C.      Granting such additional relief as this Court deems just and proper.

Dated:       Ithaca, New York
              April 2, 2019

/s/Stan Matusz

Stan Matusz, Esq.

Bar Roll # 520502

*Attorney for Plaintiffs*

29 Murfield Drive

Ithaca, NY 14850

Telephone: 607-319-5513

stanmatusz@gmail.com

## SETTLEMENT AGREEMENT AND RELEASE OF CLAIMS

This Settlement Agreement and General Release of Claims ("Agreement") is made and entered into by and between Steven Camacho, Latee Baker, Cara Pascucci, Bradley Crowe and Katina Murray (hereinafter "Plaintiffs") and Rajumaanar Enterprises, Inc. and Sunny Khan, individually, (hereinafter "Defendants") on the other hand.

**WHEREAS**, the purpose of this Agreement is to settle fully and finally all obligations or differences between Defendants and the Plaintiffs asserted in or that could have been asserted in *Steven Camacho et al., v. Rajumaanar Enterprises, Inc.,et al*, No. 3:17-CV-1181 (N.D.N.Y.) (hereinafter the "Litigation"), including without limitation, claims based on the failure to pay wages and overtime, under federal and state law, claims for retaliation, liquidated damages, penalties, compensatory damages, interest, attorneys' fees and costs.

**WHEREAS**, on October 24, 2017, Plaintiffs commenced the Litigation by filing a Complaint which alleged that Defendants violated the Fair Labor Standards Act ("FLSA") and the New York Labor Law ("NYLL") by making impermissible deductions from their wages and alleging retaliation against Named Plaintiffs Steven Camacho, Latee Baker and Cara Pascucci, individually.

**WHEREAS**, Bradley Crowe filed a Consent Form to Opt-in to this Litigation under the FLSA and became a Party-Plaintiff.

**WHEREAS**, Defendants denied and continue to deny all of the allegations made by the Plaintiffs in the Litigation, whether on behalf of themselves or purported Class or Collective Action Members, and denied and continue to deny any and all liability and damages to anyone with respect to the alleged facts or claims asserted in the Litigation. Nonetheless, without admitting or conceding any liability or damages whatsoever and without admitting that any wages and/or overtime amounts were improperly withheld from any employees, Defendants have agreed to settle the Litigation on the terms and conditions set forth in this Agreement, to avoid the burden, expense, and uncertainty of continuing the Litigation.

**WHEREAS**, Plaintiffs do not change or concede their respective positions on the merits of their claims in the Litigation, but recognize that continued litigation may be protracted, expensive, uncertain, and contrary to their best interests.

**WHEREAS**, the parties have engaged in extensive arm's length negotiations concerning the settlement of the claims asserted in the Litigation, including two mediation sessions with Paul Sweeney, Esq., and a settlement conference with United States Magistrate Judge David M. Peebles.

**WHEREAS**, the parties reached agreement on the material terms of a confidential settlement and memorialized it, on the record, before Judge Peebles on July 18, 2018;

**WHEREAS**, Judge Peebles approved the settlement agreement pursuant to the requirements of the Fair Labor Standards Act, and the parties wish to memorialize the material and other terms of their agreement.

**NOW, THEREFORE**, in consideration of the mutual covenants and promises set forth in this Agreement, as well as the good and valuable consideration provided for herein, the parties hereto agree to a settlement of the Litigation on the following terms and conditions:

1. **Release & Waiver of Claims** - Steven Camacho, Latee Baker, Cara Pascucci, Katrina Murray and Bradley Crowe (hereinafter "Plaintiffs"), for and in consideration of the covenants described in Paragraph 2 below, and other consideration set forth hereon, and intending to be legally bound, do hereby release and forever discharge Defendants Rajumaanar Enterprises, Inc. and Sunny Khanfrom all legally waivable causes of action, suits, debts, claims, injuries of any type and nature and demands whatsoever in law or in equity and/or statutory, which Plaintiffs ever had, now have, or hereinafter may have, or which Plaintiffs' heirs, executors or administrators may have by reason of any matter, cause, or thing whatsoever, occurring at any time in the past, up to and including the date of Plaintiffs' execution of this Agreement and, particularly, but without limitation of the foregoing general terms, any claims, known or unknown, which were raised or could have been raised by Plaintiffs against Rajumaanar Enterprises, Inc. and Sunny Khan including in this Litigation. Such released claims include, but are not limited to, any claims arising under the FLSA, New York Labor Law, and any other wage and hour law; and all claims for overtime pay, wages, compensatory or punitive damages, liquidated damages, interest, attorneys' fees and costs, and injunctive relief; and any and all other claims under any federal, state, local or common law, or statutory or regulatory provision now or hereafter recognized.

2. **Consideration** - In consideration of the execution of this Agreement by Plaintiffs and Plaintiffs' agreement to be legally bound by its terms, Defendants will provide a total of Twenty Eight Thousand One Hundred and Fifty Dollars and Zero Cents ($28,150.00) to be distributed as follows:

   (a). The sum of Five Thousand Six Hundred and Sixteen Dollars and Zero Cents ($5,616.00) to Steven Camacho for claimed liquidated and compensatory damages;

   (b) The sum of Five Thousand Nine Hundred and Forty Dollars and Zero Cents ($5,940.00) to Latee Baker for claimed liquidated and compensatory damages;

   (c) The sum of One Thousand Five Hundred and Thirty Dollars and Zero Cents ($1,530.00) to Cara Pascucci for claimed liquidated and compensatory damages;

(d) The sum of One Thousand Five Hundred and Thirty Dollars and Zero Cents ($1,530.00) to Bradley Crowe for claimed liquidated and compensatory damages;

(e) The sum of Five Hundred and Forty Dollars and Zero Cents ($540.00) to Katina Murray for claimed liquidated and compensatory damages;

(f) The sum of Twelve Thousand Nine Hundred and Ninety Four Dollars and Zero Cents ($12,994.00) payable to Plaintiffs' legal counsel, Stan Matusz, Esq., for attorneys' fees.

3. **Payment Schedule** – As an accommodation to Defendants, the Parties have agreed that the amounts in Paragraph 2 will be paid according to the following payment schedule:

   (a) Defendants will issue and deliver a Two Thousand Five Hundred Dollar and Zero Cent ($2,500.00) bank check payable to Stan Matusz, Esq., within thirty (30) days after execution of this Agreement;

   (b) Defendants will issue and deliver Eighteen (18) checks of One Thousand Four Hundred and Twenty-Five Dollar and Zero Cent ($1,425.00) on the first (1st) of each month. The first check shall be issued and delivered on or before October 1, 2018 and the eighteenth (18th) and final check shall be issued and delivered on or before March 1, 2020.

   (c) The checks shall be payable to Stan Matusz, Esq. Mr. Matusz agrees to deposit the proceeds into his attorney trust account and disburse the monies to the Plaintiffs based on the allocations set forth above. It is anticipated that Defendants will issue an appropriate IRS 1099 Form in connection with these payments.

4. **Dismissal with Prejudice** - In further consideration of the undertakings of Defendants set forth herein, Plaintiffs agree to dismiss with prejudice their claims in this Litigation. Plaintiffs agree to take all actions, and to direct their counsel, Mr. Matusz, to take all actions necessary for the Court to dismiss this Civil Action, including but not limited to execution of a joint Stipulation of Dismissal with Prejudice.

5. **Knowing and Voluntary Agreement** - The Parties have each been represented by counsel in the negotiation of this Agreement. The parties agree that the terms and conditions of this Agreement are the result of lengthy, intensive, arm's-length negotiations between the parties and that the Agreement shall not be construed in favor of or against any party by reason of the extent to which any party, or its counsel, participated in the drafting of this Agreement.

6. **Confidentiality** - Except as may be required by law, Counsel and Plaintiffs shall not discuss the terms of this Agreement with any third party. In particular, and

3

without limiting the foregoing, they shall not contact any representative of the media (e.g., press, radio, TV, Internet) or make any press release, social media statement or public statement concerning this settlement, and if contacted by any representative of the media, or any person in the social media, will state only that the matter has been resolved on mutually agreeable terms. However, nothing in this section shall be construed to prevent the parties or their representatives from communication with accountants or legal advisors regarding the settlement.

7. **Re-Employment** - The Plaintiffs specifically agree that they will not apply for or otherwise seek employment with Defendants. They further agree that Defendants have no obligation to employ, hire, reinstate or otherwise engage Plaintiffs in the future. The Plaintiffs further acknowledge and agree that this Agreement is sufficient and appropriate legal grounds for Defendants to deny them employment at any time in the future.

8. **Representation Regarding Other Actions or Potential Claimants** - Plaintiffs' Counsel represents that, as of this date, and with the exception of individuals referenced herein, he does not represent any other current or former employees of Defendants. Plaintiffs' counsel further certifies that he does not have any present or prospective clients with any claims that would result in other litigation against the Defendants, generally, and has no present investigations against the Defendants that would lead to additional litigation.

9. **Non-Admission of Liability** - Defendants contend that all its employees were compensated in compliance with all applicable federal, state and local laws, and that its conduct was not willful with respect to any alleged failure to pay wages (including but not limited to overtime). Defendants have denied and continue to deny each of the claims and contentions alleged in the Litigation, including claims of retaliation. Defendants deny any wrongdoing or legal liability arising out of any of the facts or conduct alleged in the Litigation, and believes it has valid defenses to the Litigation. Nothing in this Agreement, nor the negotiations that preceded it, shall be offered or construed or deemed as an admission of liability, wrongdoing, culpability, impropriety, responsibility or fault whatsoever by Defendants, who expressly deny any liability, wrongdoing, culpability, impropriety, responsibility, or fault whatsoever. In addition, nothing about this Agreement, nor the negotiations that preceded it, shall be offered or construed as an admission or evidence of the propriety or feasibility of the Plaintiffs prior intentions of certifying the Litigation as a collective and/or class action. The Parties understand and agree that this Agreement and all exhibits thereto, as well as the negotiations that preceded it, are settlement documents and/or discussions and shall be inadmissible in evidence in any proceeding, except an action or proceeding to approve, interpret, or enforce the terms of this Agreement.

10. **Mutual Cooperation** - The Parties agree to cooperate reasonably and in good faith to accomplish the terms of this Agreement. The Parties to this Agreement shall use their best efforts, including all efforts contemplated by this Agreement

and any other efforts that may become necessary (by order of this Court or otherwise) to effectuate and implement this Agreement and the terms set forth herein.

11. **Construction** - The Parties agree that, whenever possible, each provision of this Agreement shall be interpreted in such a manner as to be effective and valid under applicable law, but if any provision of this Agreement is held to be prohibited by or invalid under applicable law, such provision shall be ineffective only to the extent of such prohibition or invalidity, without invalidating the remainder of such provision or the remaining provisions of this Agreement, which shall be fully severable and given full force and effect.

12. **Authority to Sign -** The signatories to this Agreement hereby represent that they are fully authorized to enter into this Agreement and bind the Parties hereto.

13. **Entire Agreement and Amendment** - This Agreement constitutes the entire agreement between the Parties relating to the settlement and transactions contemplated hereby, and all prior or contemporaneous agreements, understandings, representations, and statements, whether oral or written and whether by a party or such party's legal counsel, are merged herein. This Agreement supersedes all prior agreements and understandings among Plaintiffs, Plaintiffs' Counsel, Defendants, and Defendants' Counsel with respect to the settlement of the Litigation.

This Agreement may not be changed, altered, waived or modified, except in a written agreement that is signed by the parties. This Agreement may not be discharged except by performance in accordance with its terms or by a writing signed by the parties hereto. Any failure by any party to insist upon the strict performance by the other party of any of the provisions of this Agreement shall not be deemed a waiver of future performance of the same provisions or of any of the other provisions of this Agreement, and such party, notwithstanding such failure, shall have the right thereafter to insist upon the specific performance of any and all of the provisions of this Agreement.

14. **Counterparts** - This Agreement may be executed in counterparts, and when each party has signed and delivered at least one such counterpart, each counterpart shall be deemed an original and, when taken together with other signed counterparts, shall constitute one Agreement, shall be binding upon and effective as to all parties. Facsimile signatures shall have the same effect as original signatures.

15. **Construction, Governing Law & Venue** - This Agreement shall be governed, construed, and interpreted in accordance with New York law, without regard to its conflicts of laws principles, except to the extent that the law of the United States governs any matter set forth herein, in which case such Federal law shall govern.

DATED: August 15, 2018

_____
Steven Camacho

DATED: August 15, 2018

_____
Latee Baker

DATED: August 15 2018

_____
Cara Pascucci

DATED: August 15, 2018

_____
Bradley Crowe

DATED: August ___, 2018

_____
Katina Murray

DATED: August 15, 2018

_____
Stan Matusz, Esq. - Counsel for
Named and Opt-in Plaintiffs

Rajumaanar Enterprises, Inc.

DATED: August 2/, 2018          By: _____
                                        Khanzada Khan

DATED: August 2/, 2018          _____
                                Sunny Khan, individually

DATED: August 2/, 2018          _____
                                Alan Pope, Esq.
                                Attorney for Defendants